DEFENDANT/PRO SE LITIGANT
KEVIN PEDERSEN
301 E. Arrow Hwy #101-625
San Dimas, CA 91773
Kpedersen1818@gmail.com

DEFENDANT/PRO SE LITIGANT
RODGER CORBETT
301 E. Arrow Hwy #101-625
San Dimas, CA 91773
Corbs3828@gmail.com



FILED
CLERK, U.S. DISTRICT COURT
OCT 17, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY ____PD____ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE SINGLETON AND CHRIS CAROSELLI<br><br>Plaintiff,<br><br>v.<br><br>BAIL HOTLINE BAIL BONDS, INC.; FUGITIVE RECOVERY INVESTIGATIONS, INC., ANAHEIM POLICE DEPARTMENT, CHAD CUMMINGS, MICHAEL DOHMANN, ROBERT CORBETT, KEVIN PEDERSON, AND DOES 1-10, INCLUSIVE,<br><br>Defendants. | Case No.:    8:22-cv-01826-MRA (KESx)<br>Assigned to: Hon. Monica Ramirez Almadani<br>Dept.:        10B<br><br>**DEFENDANT'S KEVIN PEDERSEN AND RODGER CORBETT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Concurrently filed with Separate Statement; Supplemental Declaration; and Exhibits]<br><br>Date:        November 12, 2024<br>Time:        1:30 p.m.<br>Place:        Ctrm. 10B<br><br>Action Filed:    October 7, 2022<br>Trial Date:    No Date Set |

PLEASE TAKE NOTICE that on November 12, 2024 at 1:30 p.m., in Courtroom 10B of the United States District Court, Central District of California, located at 350 W. First Street, Los Angeles, California 90012, Defendants Kevin Pedersen and Rodger Corbett, both representing themselves as Pro Se Litigants, hereby move and file their motion to the court as follows:

1.  For summary judgment in favor of Defendants Kevin Pedersen and Rodger Corbett, on all claims asserted against them and against Plaintiffs, Jamie Singleton

and Chris Caroselli, where Plaintiffs have failed to establish the existence of a genuine issue of material fact as to any and all claims asserted against Defendant Pedersen and Defendant Corbett;

2. Or alternatively, for partial summary judgment in favor of Defendant Pedersen and Defendant Corbett and against Plaintiffs, Jamie Singleton and/or Chris Caroselli, as to each and any of the claims where Plaintiffs have failed to establish the existence of a genuine issue of material fact as to any of the claims asserted against Defendant Pedersen and Defendant Corbett.

This Motion is based upon this Motion, the accompanying Memorandum of Points and Authorities, concurrently filed Separate Statement of Uncontroverted Material Facts, as well as the concurrently filed supplemental declaration of Kevin Pedersen, and attached Exhibits B through E, and any matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court.

Dated: October 17, 2024              KEVIN PEDERSEN, Defendant and Pro Se Litigant


                                    By: _____/s_ Kevin Pedersen_____

                                          KEVIN PEDERSEN
                                          Defendant and Pro Se Litigant,
                                          and on behalf of Pro Se Litigant,
                                          Defendant Rodger Corbett

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES………………………………………1

I.      INTRODUCTION ...……………………………………………………..1

II.     STATEMENT OF FACTS (SUMMARY OF PLAINTIFF JAMIE

SINGLETON'S DEPOSITION)………..…………………………………...3

     A.  Singleton's Testimony Of Her Alleged

Contact With Bail Enforcement Agents …..……………………3

     B.  Comparisons and Conclusions Drawn From Singleton's

Deposition and Grand Jury Testimony……………..……………..9

III.    THE STANDARDS ON SUMMARY JUDGMENT………………………...14

IV.    THE CIVIL RIGHTS CLAIMS SHOULD BE SUMMARILY

ADJUDICATED……………………………………………………………...15

     A.  Bail Enforcement Agents Are Not Acting Under Color of

State Law For Purposes of Section 1983…………………………15

     B.  The First Cause Of Action Fails Against The Defendants

Because The Alleged Detention/Arrest Would Be Legally

Justified Pursuant To California Penal Code 837 And 835a(b) ….16

         1.  The Defendants Would Have Been Legally Justified

To Detain/Arrest Singleton if Her Allegation Of Such

Is In Fact True………………………………………………16

         2.  The Defendant Officers Provided No Affirmative

Physical Support………………………………………………17

     C.  The Second Cause of Action For Excessive Force Should

Be Summarily Adjudicated In Favor Of Defendants Pedersen

And Corbett…………………………………………………18

         1.  No Integral Participation In Force Against Caroselli……..18

         2.  No Excessive Use Of Force Was Used In The

(Alleged) Lawful Detention/Arrest……………………….19

     D.  The Third Cause of Action Does Not Apply Directly To

Defendants Pedersen and Corbett…………………………………...19

V.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE STATE LAW TORT CAUSES OF ACTION…………………………20

A.  The Fourth And Fifth Causes Of Action For Assault And Battery Should Be Summarily Adjudicated………………………20

1.  No Integral Participation In Force Against Caroselli…………………………………………………..20

2.  The Alleged Detention/Arrest Of Singleton Would Be Considered Lawful, Thus No Assault Or Battery Occurred…………………………………....20

B.  The Defendants Did Not Falsely Imprison Singleton……………21

C.  The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Either Plaintiff………...21

1.  The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Caroselli……………………………………22

2.  The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Singleton, Nor Was Any Alleged Conduct Outrageous Or Extreme………………………...22

VI.   CONCLUSION………………………………………………………..23

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Federal Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
(1986) 477 U.S. 242, 247-48, 252, 256, 106 S.Ct. 2505……………………………14, 15

*Atwater v. Lago Vista,*
*(2001)* 532 U.S. 318 2001 ……………………………………………………..17, 18

*Boyd v. Benton County,*
(9th Cir. 2004) 374 F.3d 773, 780-781……………………………………………18

*Briscoe v. Madrid,*
(E.D. Cal. 2018) 2018 WL 573376 AT *3…………………………………………..15

*Celotex Corp. v. Catrett,*
(1986) 477 U.S. 317, 322-325, 106 S.Ct. 2548……………………………………14, 15

*Collins v. Womancare,*
(9th Cir. 1989) 878 F.2d 1145, 1154………………………………………………17

*Dixon v. Wesbrook,*
(E.D. Cal. 2012) 2012 WL 6160797 AT *6………………………………………15, 16

*Graham v. Connor,*
(1989) 490 U.S. 386, 396-397, 109 S.Ct. 1865, 1871-1872……………………19, 20

*In re Oracle Corp. Securities Litigation,*
(9th Cir.2010) 627 F.3d 376, 387…………………………………………….…..15

*Jones v. Community Redevelopment Agency,*
(9th Cir. 1984) 733 F.2d 646, 649)………………………………………………16

*Jones v. Williams,*
(9th Cir. 2002) 297 F.3d 930, 936 …………………………………………………18

*Lugar v. Edmonson Oil Co.,*
(1982) 457 U.S. 922, 936, 941. 102 S.Ct. 2744…………………………………...15, 16

*Margolis v. Ryan,*
(9th Cir.1998) 140 F.3d 850, 852……………………………………………...14

iii

*Monteilh v. County of Los Angeles,*
  (C.D. Cal. 2011) 820 F.Supp.2d 1081, 1090-1091 ……………………………………...…18

*Ouzts v. Maryland Nat. Ins. Co.,*
  (9th Cir. 1974) 505 F.2d 547, 554 ………………………………………………...…15

*Price v. State of Hawaii,*
  (9th Cir. 1991) 939 F.2d, 702, 708 …………………………………………………16

*Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,*
  (9th Cir. 1983) 707 F.2d 1030, 1033 ………………………………………………..14

*Sutton v. Providence St. Joseph Med. Ctr.,*
  (9th Cir. 1999) 192 F.3d 826, 825 …………………………………………………15


State Cases

*Alterauge v. Los Angeles Turf Club,*
  (1950) 97 Cal.App.2d 735, 736 ……………………………………………………21

*Bock v. Hansen,*
  (2014) 225 Cal.App.4th 215, 235 ……………………………………………………22

*Davidson v. City of Westminster,*
  (1982) 32 Cal.3d 197, 209 ………………………………………………………....22

*Hughes v. Pair,*
  (2009) 46 Cal. 4th 1035, 1050-1051 …………………………………………………22

*Martinez-Rodriguez v. Bank of America,*
  (2012) N.D. Cal. …………………………………………………………17, 21, 23


Federal Statutes

42 U.S.C. § 1983 ………………………………………………………………..1, 15

State Statutes

California Penal Code § 32 ………………………………………10, 11, 16, 19, 20, 22

California Penal Code § 245(a)(1) ……………………………………10, 11, 17, 19, 20, 22

California Penal Code § 835a(b) ………………………………………2, 12, 13, 16, 19, 21, 22

California Penal Code § 837 ……………………………………………...…1, 2, 11, 16

California Penal Code § 1320.5 ………………………………………...…10, 11, 16

<u>Rules</u>

Fed.R.Civ.P. 56(a) ………………………………………………………..…14

Fed.R.Civ.P. 56(e) ………………………………………………………..…14

<u>Other Authorities</u>

CACI No. 1600 ……………………………………………………………...…..22

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants, Kevin Pedersen and Rodger Corbett, both who were certified and legally-acting bail enforcement agents at the time of the alleged October 7, 2020 incident, are being sued for civil rights violations and torts over their alleged involvement of an incident that allegedly involved them attempting to apprehend a violent felony fugitive, Michael Velasquez ("Velasquez"). Defendants Kevin Pedersen and Rodger Corbett (hereby referenced to as "Defendants") are being sued, not by the fugitive involved in the matter, but by Plaintiff, Jamie Singleton ("Singleton"), who undisputedly committed and admitted to committing ***at least one felony crime*** that day related to this incident, that she was never arrested, booked or criminally charged for by police or prosecutors, and by Plaintiff, Chris Caroselli ("Caroselli"), who got involved in a minor tussle with a bail enforcement agent who is not being sued in this matter, and who never had contact with the Defendants. As such, the Defendants clearly did not commit any torts or civil rights violations as to these plaintiffs.

The *First* Cause of Action under 42 U.S.C. § 1983 should be summarily adjudicated in favor of the Defendants, because they did not violate Singleton's rights against seizure, and did not (allegedly) *illegally* detain, arrest or seize Singleton; and

The *Second* Cause of Action under 42 U.S.C. § 1983 for excessive force should be summarily adjudicated in favor of the Defendants as they never had physical contact with Caroselli, and as to the alleged detention/arrest/seizure of Singleton, would have been legally justified in doing so based on Singleton's illegal actions that day in committing and indirectly admitting she committed ***at least one felony crime during the incident***,

pursuant to California Penal Code 837. As to the excessive force, pursuant to California

Penal Code 835a(b), this statute allows a person making an arrest to use objectively

reasonable force to effect the arrest, to prevent escape, or to overcome resistance.

Singleton also admitted that she did not sustain significant injury as a result of this

incident and did not seek any medical attention as a result of any alleged actions

taken/forced used on her by the Defendants against her, thus negating the claim of

excessive use of force; and

The _Third_ Cause of Action by Singleton, no argument is made by the Defendants

as it does not directly relate to them; and

The _Fourth_ and _Fifth_ Causes of Action for Assault and Battery should be

summarily adjudicated in favor of the Defendants because they never had any contact with

Caroselli whatsoever, and as to Singleton and the alleged detention/arrest/seizure, would

have had legal grounds for said detention/arrest/seizure pursuant to California Penal Code

837 due to her actions and admissions in committing **_at least one felony crime_** during the

incident, and would also legally be able to use objectively reasonable force to effect an

arrest pursuant to California Penal Code 835a(b), thus making the alleged detention/any

force used legal and not an assault and/or battery against Singleton; and

The _Sixth_ Cause of Action for False Imprisonment should be summarily

adjudicated in favor of the Defendants because Singleton expressly conceded during her

deposition that she **_agreed to cooperate_** with the bail enforcement agents by showing them

where Velasquez had been staying. This admission completely dispels the allegation of a

False Imprisonment claim in this matter; and

2

The _Seventh_ Cause of Action for Intentional Infliction of Emotional Distress should be summarily adjudicated in favor of the Defendants as they did not engage in any extreme or outrageous conduct, considering that the alleged detention/arrest/seizure and any alleged force used to affect such alleged detention/arrest/seizure would be legally justified in this matter based on Singleton's undisputed committing of and admission of committing **_at least one felony crime_** during this incident. A _legal_ arrest/detention/seizure of an individual, along with no excessive force used, cannot possibly be argued as intentional infliction of emotional distress, which negates this claim completely.

II.    **STATEMENT OF FACTS (SUMMARY OF PLAINTIFF JAMIE SINGLETON'S DEPOSITION)**

A. **SINGLETON'S TESTIMONY OF HER ALLEGED CONTACT WITH BAIL ENFORCEMENT AGENTS**

\*Please note that throughout this document, **_ANY_** statement made implying or stating that either one of the Defendants, Pedersen or Corbett, did or didn't do something as it relates to this incident or any interactions with Plaintiff Singleton, is directly being stated as an argument based on **_her statements and testimony,_** and **_is not_** the Defendant's admitting or agreeing that her statements about any alleged involvement of the Defendants in the incident are true and are only merely alleged. Defendants Pedersen and Corbett rather are arguing their points based on Singleton's statements and testimony, the many holes and inconsistencies in it, and do not concede that any alleged involvement of theirs as stated by Singleton as being true. Her statements are being argued as factual in the sense that it is a fact that she made such statements, as opposed to whether or not the statements she is making are factual themselves in content.\*

3

In her deposition, Singleton states that she met both Defendants for the first time at her home in Anaheim Hills roughly in the month of September, 2020 [Defendant Exhibit B, Pg. 32:10-19, 33:4-5]

Singleton says the purpose of the bail enforcement agents (Defendants) visiting her at her home was because "They were looking for Michael (Velasquez)." [Ex. B 32:22]

Singleton states the Defendants were looking for Velasquez because "he was on the run from a bail or bounty that I had signed for" and later admits that he had missed his court date for his bail. [Ex. B 33:15-25, 34:1] She claims she didn't remember if she already knew that Velasquez had "skipped bail" but said she knew once the Defendants informed her of it. [Ex. B 34:25, 35:1-9]

Singleton says the bail enforcement agents asked her if she knew of Velasquez' whereabouts, and claimed she didn't recall what she told them, but claimed she told them the truth at that time. [Ex. B 35:17-25, 36:1-3] She added that they provided her with a business card and requested she call them if she learned of his whereabouts. [Ex. B 36:9-11]

Singleton admitted she was still in touch with Velasquez during that time frame and knew of his whereabouts. [Ex. B 36:15-25] When asked why she didn't let Corbett know where Velasquez was, she claimed he would go missing for days. [Ex. B 37:3-16]

Singleton said she went to where Velasquez was staying in Long Beach and saw him on October 7, 2020, and that at one point he got into her car. [Ex. B 37:17-25, 38:1-4]

Singleton stated at one point after picking up Velasquez, at approximately 4:00 p.m., they were pulled to the side of the road with her in the driver's seat and him in the front passenger seat of the vehicle, when suddenly saw a man with a gun standing next to her car, and that she did not recognize the individual. [Ex. B 43:6-16] She claims she got scared upon seeing the man after she claimed he struck her driver's window with a gun at which time she drove away. [Ex. B 43:18]

Singleton was asked how she came to realize that the man was a bail agent and she claimed she didn't recall. She later answered the first time she recalled realizing that the man was a bail agent was when she "got to my girlfriend Rina's house." [Ex. B 46:13-25, 47:4-12] When asked if she or Velasquez had any conversation about what had just happened after fleeing the area, Singleton said, "Not that I recall." [Ex. B 47:13-17]

Singleton was asked where she went from there, and she replied that she drove her car around the Long Beach area and was "hauling butt" because "the car" was following her and she was scared, implying that she was trying to get away from the car. [Ex. B 47:19-25, 48:1-15] Singleton admits she was "going through red lights" while being followed by the vehicle in question. [Ex. B 49:3]

Singleton stated at one point while being followed, she turned down a street and it turned out to be a cul-de-sac, which forced her to turn back around in the direction she had just came from. She then says she and the vehicle in question were driving "head on, and I just swerved away from him just to get away from him." [Ex. B 49:18-20] She added that she "may have lost him around that time." [Ex. B 49:25] She claimed she didn't recognize the driver of the other vehicle when driving "head to

5

head" with one another. [Ex. B 50:2-5] Singleton said she was being chased through the streets of Long Beach for approximately 20 minutes and drove erratically to "lose him." [Ex. B 50:13-25, 51:1-3]

Singleton stopped in a nearby alley to regain her composure after believing she "lost" the car. [Ex. B 50:20-25, 51:1-9] She admits to having a cell phone on her that day during that time but did not call 9-1-1 for police assistance [Ex. B 51:17-25, 52:1-13]

Singleton states she got gas somewhere in the Garden Grove area after losing the car. She said Velasquez and her switched spots so Velasquez was driving and she was a passenger. She stated the person who had been following her reappeared and continued following them while Velasquez was driving and on the phone. She says they eventually lost the car again, got to the Four Points Hotel in Anaheim where Velasquez had arranged for his mother to pick him up from, and then she took over driving the vehicle. [Ex. B 52:15-25, 53:2-25, 54:3-25]

Singleton admitted she didn't obey traffic signals, ran red lights, ran stop signs, was speeding, and was trying to lose the truck in question during the incident. She once again claimed it was because someone with a gun was chasing her. She adds that Velasquez had been on the phone arranging for his mother to pick him up at the Four Points Hotel and said he may have told her what was happening. [Ex. B 55:20-25, 56:1-12, 57:1-13]

Singleton stated she lost her pursuer twice during the "chase" and after dropping off Velasquez at the Four Points Hotel, drove straight to her girlfriend's house in Anaheim. Singleton admitted to not calling 9-1-1 at that time. She admits that

6

when Velasquez took over driving, he was not obeying traffic laws, was driving in the opposing lanes of traffic at times and driving head-on into traffic. [Ex. B 58:13-25, 59:10-17, 61:6-18]

Singleton stated she drove to her friend Rina's house, parked her car and made brief contact with Rina, at which time she saw a gentleman suddenly running at her full speed. She claimed she didn't recognize the individual until he ran up and handcuffed her, then realized it was Corbett. Singleton claimed she was handcuffed by Corbett and that Pedersen walked up and may have assisted Corbett in putting handcuffs on her. She admits that she was "struggling a bit" because she "didn't know what was going on." Singleton said she remembers Corbett telling her "*something about running away, or I tried to hit him or something to that effect*." Singleton says she was seated in the passenger seat of the truck in question and soon after, Corbett entered the truck and unhandcuffed her and she wasn't restrained in any other fashion. Singleton remembered being told by either Corbett or Pedersen that she was being detained or arrested "*for something to the effect that I had tried to hit them with my car.*" Singleton claimed she began realizing at this point that the man who approached her vehicle and was chasing her in Long Beach was Corbett, who was looking to arrest Velasquez. [Ex. B 65:5-11, 66:15-18, 67:25, 68:1-5, 69:19-25, 70:1-3, 78:8-21, 79:2-18, 81:4-23]

Singleton stated she was handcuffed for about five to ten minutes during the incident and states Anaheim Police arrived on scene basically as the handcuffs were being taken off of her. [Ex. B 84:4-15] Singleton, after saying she was unhandcuffed and never again restrained in any fashion, [Ex. B 91:14-18] said she agreed to help

bail agents by driving with them to Long Beach to show them where Velasquez was staying. She said she did this willingly. [Ex. B 82:15-25] She was additionally asked "Did they also ask you to take you to where you had dropped Michael off?" to which she replied, "Yes, they did." She was then asked, "And you agreed to help them on at least these two requests about where he was staying and where he had been dropped off, right?" to which she replied, "Yes." [Ex. B 83:13-19] Singleton agreed that most of the time the police were on scene, she was unhandcuffed and recalled the handcuffs being removed as police actually arrived. [Ex. B 84:11-15]

After stating ***she agreed to cooperate with bail enforcement agents*** in showing them where Velasquez was dropped off and where he had been staying, Singleton admitted she never told bail agents Velasquez was dropped off at the Four Points Hotel. [Ex. B 94:2-5] Singleton says she went with bail enforcement agents and ***agreed to show them where Michael had been staying***, *admitting she willingly cooperated with bail agents*. She said after showing them the location in Long Beach, she was dropped back off at her vehicle in Anaheim. She admitted to not calling the police once dropped off, nor the next day. [Ex. B 94:6-25, 95:1-4, 102:8-12]

After the alleged incident, Singleton admitted to being in contact with Corbett in the days after, saying that he reached out, asking her if she had any updated information, to which she told him she didn't.[Ex. B 103:4-17]

Singleton said Corbett asked her if she had any updated information on Velasquez whereabouts but she told him she didn't.  She claimed she hadn't been in touch with Velasquez in the days after the incident while Corbett was texting her for information. She said Corbett asked her to go check Velasquez' sister's house to see if

8

he was there and she said she would but admitted not doing so, but claimed it wasn't to prevent him from getting arrested. Singleton asked Corbett to let her know if he found out any information, seemingly to fish for information for Velasquez. [Ex. B 108:5-18, 109:13-25, 110:1-25, 111:1-25, 112:1-25, 113:1-25, 114:1-25, 115:1-7]

A text message that was sent by Singleton allegedly to Corbett was presented to her during the deposition, which clearly showed she was with Velasquez at the time of his arrest by bail agents on December 01, 2020, and she was asking Corbett where her purse was (that was left in the motel room they were in). The arrest took place at the Best Host Inn in the City of Buena Park, CA. Singleton admitted to renting the room for Velasquez and seeing him several times between October 7, 2020 and December 1, 2020. [Ex. B 115:11-25, 116:1-25, 117:1-20]

Singleton claimed that Velasquez never told her that the man following them was a "bounty hunter." She also claimed she didn't know it was a bail agent following her by the time she got to the gas station in Garden Grove. She additionally claimed she didn't flee from the person to ensure Velasquez wasn't arrested that day. [Ex. B 117:21-25, 118:1-25, 119:1-14]

Singleton admits she had been arrested for possession of a controlled substance (methamphetamine) in the past and admits she used methamphetamine for a "couple years" while she was with Velasquez and was "under the influence of that with him." [Ex. B 177:6-24]

**B. CONCLUSIONS DRAWN FROM SINGLETON'S DEPOSITION AND GRAND JURY TESTIMONY**

Please note that a grand jury hearing took place related to the criminal case related to this incident, in which Singleton testified in court while under oath about the

9

events that took place on or about October 7, 2020, related to this incident. Due to the limited word usage allowed in this motion, Defendants respectfully request the Statement of Facts filed concurrently with this motion be reviewed for more details as to what Singleton testified to in her grand jury hearing, and how inconsistent some of her statements were compared to her deposition responses. When comparing the testimony between Singleton's deposition and grand jury hearing transcripts, any objectively reasonable person would agree that there are multiple discrepancies, lies and omissions in her story.

The fact that Velasquez bailed out of jail for multiple felony charges, had missed court and was "on the run" is a violation of California Penal Code 1320.5, a felony, and his actions in attempting to and successfully evading capture that day were obvious actions to continue to commit that crime. PC 1320.5 says that a period of 14 days from the court date missed constitutes a violation of the crime. Velasquez forfeited his bail bond and did not appear for his scheduled court date on July 22, 2020 (See Exhibit D).

In addition to committing a felony violation of PC 245(a)(1) during the incident, Singleton clearly and obviously committed California Penal Code 32, a felony, which means she was an accessory to Velasquez' crime of PC 1320.5 and aided him in doing so. Singleton's actions clearly showed her intent to aid Velasquez in evading capture that day, hiding his whereabouts during the incident and after, and continuing to help him avoid capture by renting him motel rooms in her own name. All of these facts point to the clear and obvious fact that Velasquez committed a

felony violation of PC 1320.5 and Singleton aided and assisted him in doing so, which she should and could have been arrested and charged with.

Singleton said she was handcuffed by her pursuer. Even if true and accurate, the pursuer would have been legally justified to detain/arrest her pursuant to California Penal Code 837 because there was probable cause to arrest/detain her for PC 32 and PC 245(a)(1). In addition, Velasquez was wanted for violent crimes. Based on my prior training and experience as a police officer of 9 years, I know that it is very common for felons/wanted felons to be in possession of firearms and other dangerous weapons. Based on those faces and the fact that he and Singleton were both driving erratically and clearly trying to evade capture that day, it would be reasonable to believe that had Velasquez still been in the immediate area where Singleton was allegedly contacted by bail agents, he could have potentially used force against them to try to ensure he successfully evaded capture. In addition, if Singleton had not allegedly been detained/arrested at that time briefly, it would have been reasonable for bail agents to believe she could have used force against them based on her actions leading up to that point (including using her vehicle as a weapon) to try to ensure they did not find or apprehend Velasquez. Based on evidence presented, it is clear that bail agents didn't seem to know if Velasquez was still with Singleton or not by the time she arrived at 1310 W. Diamond Drive in Anaheim and thus could reasonably believe he was still in the immediate vicinity, and that he and Singleton posed a credible threat to their safety based on their prior actions that day.

Regardless of what responding police officers did or didn't do as it pertains to the crimes Singleton committed that day (i.e., taking custody of Singleton and

11

arresting her for the above mentioned crimes), it does not change the fact that she did commit felony crimes that day and should have and legally could have been arrested and charged with said crimes. This negates her claim against an illegal seizure, the *First Cause of Action* in this matter, as well as the *Fourth Cause of Action* and *Fifth Cause of Action* due to the fact that if Singleton was in fact detained/arrested during the incident, it would have been legally justified to do so based on the above mentioned facts, thus negating any claim of assault and/or battery used against her.

As it relates to the *Second Cause of Action,* specifically to claim the use of excessive force, pursuant to California Penal Code 835a(b), this statute allows a person making a (legal) arrest to use objectively reasonable force to effect the arrest, to prevent escape, or to overcome resistance. Based on the circumstances described above, the alleged detention/arrest would clearly be legal. Singleton also admitted she did not sustain significant injury as a result of this incident and did not seek any medical attention as a result of any alleged actions taken/forced used on her by the Defendants against her, thus negating the claim of excessive use of force.

Additionally, after comparing Singleton's deposition and grand jury testimonies, it is clear that she has lied, omitted information, and changed her story several times. Due to these facts, coupled with the fact that she merely claimed to have swelling and soreness the day after the incident (and she didn't say she had any soreness or swelling beyond that), she didn't seek medical attention, there are no photographs or other evidence indicating that she did have swelling or any other obvious injuries to herself as a result of the incident, there is no proof that she did in fact have swelling, soreness or pain to her arms or wrists as a result of the incident.

12

This negates her claim of excessive use of force as stated in the _Second Cause of Action._ Please note that the above mentioned facts including what PC 835a(b) covers as it pertains to using force during an arrest, also directly negates Singleton's claims of assault and/or battery in the _Fourth Cause of Action_ and _Fifth Cause of Action._

Singleton admitted that she willingly cooperated with bail agents by going with them to show them where Velasquez had been staying. She also admitted to having a financial interest in cooperating with agents, as she was the indemnitor on a $280,000 bail bond. Had Velasquez bail bond not been cleared in a timely manner, the bail company would have eventually civilly sued Singleton and the other two indemnitors for that amount. In addition to agreeing to cooperate with agents, it was clearly in Singleton's best interest to cooperate in order to not put herself in such a financially compromising situation. Her direct admissions of willingly cooperating with bail agents completely negates her false imprisonment claim in the _Sixth Cause of Action._

As it pertains to the _Seventh Cause of Action_, Intentional Infliction of Emotional Distress, based on the facts and arguments above, it is clear that the alleged detention/arrest of her by bail agents would have been lawful. There is no substantiated claim of excessive use of force, nor any proof that she sustained any injuries and only the contrary. She specifically states that she did not sustain injuries as a result of the incident, then adds and says that her arm hurt and she had swelling the day after the incident, which there is no proof of. In addition, she admits to cooperating with bail agents by allegedly going with them in a vehicle to show them where Velasquez had been staying. Someone that willingly goes with someone to a

13

place that they agreed to go to would not suffer emotional distress as a result. In addition, the argument of being emotionally distressed during an *illegal* detention may be a valid one, however, not during a *legal* one, which based on the facts of this matter, it is clear that an alleged detention/arrest of Singleton given the circumstances, clearly would be legally justified, thus negating any claim of Intentional Infliction of Emotional Distress.

### III.   THE STANDARDS ON SUMMARY JUDGMENT

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(a); *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 247-48, 106 S.Ct. 2505. Typically, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.* (9th Cir. 1983) 707 F.2d 1030, 1033; *Margolis v. Ryan* (9th Cir.1998) 140 F.3d 850, 852. The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323, 106 S.Ct. 2548.

When the non-moving party has the burden at trial, the moving party need not produce evidence disproving every element of the non-moving party's case. Instead, the burden is met by showing the absence of evidence supporting a part of the non-moving party's case. *Celotex,* 477 U.S. at 325, 10 S.Ct. 2548.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact. *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an

affirmative showing on all matters placed in issue as to which it has the burden of

proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256,

106 S.Ct. 2505. This burden is not a light one. The non-moving party must show more

than a mere speck of evidence or some doubt as to the material facts. *In re Oracle*

*Corp. Securities Litigation* (9th Cir.2010) 627 F.3d 376, 387. A genuine issue of

material fact exists only "if the evidence is such that a reasonable jury could return a

verdict for the non-moving party." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

**IV.    THE CIVIL RIGHTS CLAIMS SHOULD BE SUMMARILY**
**ADJUDICATED**

The first three causes of action are brought under 42 U.S.C. § 1983 ("Section

1983") for alleged civil rights violations. Whether a person is subject to suit under

Section 1983 depends on whether the alleged infringement of federal rights is fairly

attributable to the government. *Sutton v. Providence St. Joseph Med. Ctr.* (9th Cir.

1999) 192 F.3d 826, 825 (*quoting Rendell-Baker v. Kohn* (1982) 457 U.S. 830, 838,

102 S.Ct. 2764). Section 1983 claims require constitutional violations by someone

acting "under color of" state law. Private parties are not liable for violations of most

rights secured by the Constitution. *Lugar v. Edmonson Oil Co.* (1982) 457 U.S. 922,

936, 102 S.Ct. 2744.

**A.    Bail Enforcement Agents Are Not Acting Under Color of State Law**
**For Purposes of Section 1983**

The Ninth Circuit has found that bounty hunters or bail enforcement agents are

not acting under color of the state law for purposes of Section 1983. *Dixon v.*

*Wesbrook* (E.D. Cal. 2012) 2012 WL 6160797 at *6; *see also Ouzts v. Maryland Nat.*

*Ins. Co.* (9th Cir. 1974) 505 F.2d 547, 554 (bail bondsmen not under color of state law

when they seized fugitive); *Briscoe v. Madrid* (E.D. Cal. 2018) 2018 WL 573376 at *3

(§1983 claim dismissed against bail enforcement agent who used force and drove plaintiff "around Fresno for several hours"). The only exception, as noted in *Dixon, supra,* 2012 WL 6160797 at *6, is if a plaintiff can prove that the private bounty hunters acted in concert with the police.

Cases have recognized situations where a private person may become a state actor, and thus liable under Section 1983, by engaging in joint activity with state officials. *Price v. State of Hawaii* (9th Cir. 1991) 939 F.2d, 702, 708; *see also Lugar, supra,* 457 U.S. at 941, 102 S.Ct. 2744. However, "joint action requires a substantial degree of cooperative action." *Collins v. Womancare* (9th Cir. 1989) 878 F.2d 1145, 1154. Conclusory allegations of government involvement, unsupported by facts, will be "rejected as insufficient to state a claim under the Civil Rights Act." *Price, supra,* 939 F.2d at 708 (citing *Jones v. Community Redevelopment Agency* (9th Cir. 1984) 733 F.2d 646, 649).

### B. <u>The First Cause Of Action Fails Against The Defendants Because The Alleged Detention/Arrest Would Be Legally Justified Pursuant To California Penal Code 837 And 835a(b)</u>

The First Cause of Action, brought solely by Plaintiff Singleton alleges she was seized in violation of her Fourth Amendment rights by the Defendants, who then also allegedly drove her around for about three hours.

#### 1. <u>The Defendants Would Have Been Legally Justified To Detain/Arrest Singleton if Her Allegation Of Such Is In Fact True</u>

Multiple points were brought up previously in this motion, clearly indicating that Singleton undisputedly committed a felony violation of California Penal Code 32 the day of the alleged October 7, 2020 incident, with Singleton being an accessory to the felony violation of PC 1320.5 that was committed by Michael Velasquez, who was

16

a wanted felony fugitive at the time. There is additional evidence that strongly

suggests that she additionally committed a felony violation of California Penal Code

245(a)(1), and that there would have been probable cause for her to have been

arrested/detained for that violation as well that day. An incident in which a legal

arrest/detention is made is <u>not</u> a violation of Section 1983. *Martinez-Rodriguez v.*

*Bank of America,* (N.D. Cal. 2012). *Atwater v. Lago Vista,* 532 U.S. 318 2001. In

*Atwater v. Lago Vista,* a warrantless arrest was made by a police officer for a mere

seatbelt violation and was ruled as being lawful. In this case, the alleged

arrest/detention could have been made for two felony violations that occurred in the

presence of the alleged pursuer.

### 2.   <u>The Defendant Officers Provided No Affirmative Physical Support</u>

In this case, the Section 1983 claims under the First Cause of Action cannot be

valid unless there is evidence that a police officer, government entity, or person

"acting under color of state law" was an "integral participant" in the arrest or detention

of the plaintiff.

There is zero evidence in this matter that suggests at all that Defendants

Pedersen and Corbett acted in concert with ***any*** police officers that day, in days

leading up to the incident in question, or after the incident, and merely only evidence

of the police being summoned to the location due to the nature of the situation at hand.

Additionally, as Assistant City Attorney of the City of Anaheim, Mr. Tyson, has

argued in his motion for summary judgment, there is no evidence whatsoever that

suggests that Anaheim Police Officers were a part of or assisted in any detention or

arrest of Singleton on October 7, 2020.

Officers must be "integral participants" in a constitutional violation with their substantial cooperation to be liable in incidents where they did not directly engage. *Boyd v. Benton County* (9th Cir. 2004) 374 F.3d 773, 781. Officers are not "integral participants" by merely being at the scene of an alleged unlawful act. *Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 936. Rather, integral participation requires some fundamental personal involvement by each officer in the conduct that caused the violation. Officers would be considered fundamentally involved or "integral participants" in an alleged violation if they provided affirmative physical support at the scene of the incident, ***and*** they are aware of the plan to commit the alleged violation or have reason to know of the plan, but do not object. *Boyd v. Benton County* (9th Cir. 2004) 374 F.3d 773, 780; *see also Monteilh v. County of Los Angeles* (C.D. Cal. 2011) 820 F.Supp.2d 1081, 1090 ("Officers' presence … is insufficient to establish integral participation…"). There is no evidence whatsoever in this matter that responding police officers were integral participants in the alleged detention/arrest of Singleton, nor the alleged false imprisonment claim, or any other claims for that matter.

## C.  The Second Cause of Action For Excessive Force Should Be Summarily Adjudicated In Favor Of Defendants Pedersen And Corbett

The second Cause of Action, brought by both Singleton and Caroselli, alleges that bail agents used excessive force to seize Singleton, and that the officers assisted in such and that the officers assaulted Caroselli "along with" the bail agents.

### 1.  No Integral Participation In Force Against Caroselli

As it relates to Caroselli, there is no evidence whatsoever that Defendants Pedersen or Corbett ever touched, used forced against, or assisted anyone in using

CASE NO. 8:22-CV-01826 DOC (KESX)

force against him. In fact, there is video evidence that was presented in this matter that shows other persons not involved in this suit as having contact with Caroselli, but never either Defendant.

### 2. No Excessive Use Of Force Was Used In The (Alleged) Lawful Detention/Arrest

As it relates to Plaintiff Singleton, the key issue is whether the alleged detention/arrest of her was lawful and whether the alleged use of force to effect such detention/arrest is objectively unreasonable under the circumstances. *Graham v. Connor* (1989) 490 U.S. 386, 396-397, 109 S.Ct. 1865, 1871-1872. In this matter, Singleton claims the arrest/detention was unlawful and that excessive force was used. However, the evidence presented in this case and motion shows otherwise, specifically, that the alleged arrest/detention made by bail enforcement agents was in fact lawful due to her committing the felony crimes of PC 32 and PC 245(a)(1) that day and thus pursuant to California Penal Code 835a(b), any forced used to effect such arrest, overcome resistance, or to prevent escape, would be lawful. In fact, Singleton claimed to not have sustained any injuries from the incident, then recanted and said she had arm pain and swelling the day after the incident that she did not seek medical attention for, nor is there any proof or photographic evidence of. Thus, any alleged force that was used to effect such alleged lawful arrest would be considered "objectively reasonable" and not excessive.

### D. The Third Cause of Action Does Not Apply Directly To Defendants Pedersen and Corbett

Not only is the Third Cause of Action not applicable to Defendants Pedersen and Corbett directly, but it clearly does not apply to the City of Anaheim and Officer Defendants in this matter based on Mr. Tyson's argument in his motion for summary

judgment. Based on all of these facts, it is clear that none of the first three causes of action are valid, and thus, no Section 1983 violations were committed by any Defendant party named in this suit.

## V.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE STATE LAW TORT CAUSES OF ACTION

### A.    The Fourth And Fifth Causes Of Action For Assault And Battery Should Be Summarily Adjudicated

In the Fourth and Fifth Causes of Action, each plaintiff brings state law tort claims for Assault and Battery.

#### 1.    No Integral Participation In Force Against Caroselli

As stated above in section **C1**, not only did neither Defendant Pedersen nor Corbett ever had any direct contact with Caroselli during the alleged incident, but there is absolutely no evidence whatsoever that they ever touched, used force against, or assisted anyone in using force against Caroselli.

#### 2.    The Alleged Detention/Arrest Of Singleton Would Be Considered Lawful, Thus No Assault Or Battery Occurred

As stated above in section **C2**, as it relates to Plaintiff Singleton, the key issue is whether the alleged detention/arrest of her was lawful and whether the alleged use of force to effect such detention/arrest is objectively unreasonable under the circumstances. *Graham v. Connor* (1989) 490 U.S. 386, 396-397, 109 S.Ct. 1865, 1871-1872. In this matter, Singleton claims the arrest/detention was unlawful, which would constitute an assault and battery. However, the evidence presented in this case and motion shows otherwise, specifically, that the alleged arrest/detention made by bail enforcement agents would in fact be lawful due to her committing the felony crimes of PC 32 and PC 245(a)(1) that day (as detailed multiple times throughout this

motion) and thus pursuant to California Penal Code 835a(b), any forced used to effect such arrest, overcome resistance, or to prevent escape, would be lawful. This completely negates any claim of an assault or battery against Singleton or Caroselli for that matter, thus showing that summary judgment for the Fourth and Fifth Causes of Action is appropriate.

### B.  The Defendants Did Not Falsely Imprison Singleton

Singleton sued Defendants Pedersen and Corbett for false imprisonment, the Sixth Cause of Action. The tort of false imprisonment requires a showing of the 'nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time…' *Alterauge v. Los Angeles Turf Club* (1950) 97 Cal.App.2d 735, 736. Singleton directly admits at deposition and in her grand jury hearing testimony on several occasions that she *willingly cooperated with bail enforcement agents by going with them to show them where Velasquez had been staying.* Singleton's own testimony in this case alleges that she was handcuffed by bail enforcement agents and put in a truck, then was shortly thereafter unhandcuffed while seated in the truck. The argument for the alleged detention/arrest has been made numerous times throughout this motion and clearly would be lawful, which would dispel a false imprisonment claim as to that portion of the incident. *Martinez-Rodriguez v. Bank of America,* N.D. Cal. (2012). Furthermore, Singleton's direct admission of *agreeing to assist bail agents* and *"willingly cooperating"* with them completely takes away the "nonconsensual" element necessary for their to be a false imprisonment claim. As such, summary judgment is appropriate.

### C.  The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Either Plaintiff

21

The Seventh Cause of Action by both Plaintiffs against the Defendants is for intentional infliction of emotional distress ("IIED"). A cause of action for IIED requires a showing of extreme and outrageous conduct by the Defendant with the intention of causing, or reckless disregard of, causing emotional distress. *Hughes v. Pair* (2009) 46 Cal. 4th 1035, 1050-1051; CACI No. 1600. A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of decency that are usually tolerated in a civilized community. *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209. Courts have regularly dismissed IIED cases where the best facts in evidence would not arise to outrageous conduct as a matter of law. *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 235.

### 1.   The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Caroselli

As it relates to Caroselli, as previously stated, the Defendants never had any contact with Caroselli and never spoke to, touched, used force against, or assisted anyone in using force against him. There is no evidence whatsoever that suggests either Defendant ever caused any harm to, attempt to do so, threatened Caroselli in anyway, or even spoke to or had any contact with him whatsoever.

### 2.   The Defendants Did Not Commit An Act Of Intentional Infliction Of Emotional Distress Against Singleton, Nor Was Any Alleged Conduct Outrageous Or Extreme

As stated previously, the Defendants' alleged act of detaining/arresting Singleton as she claims would have been lawful and legally done based on her committing the felony crimes of PC 32 and PC 245(a)(1) during the incident, and that probable cause for such detention/arrest would exist in that circumstance. Using objectively reasonable force to effect the detention/arrest as described in PC 835a(b)

would be justified. Singleton additionally admitted to *willfully cooperating* with bail

enforcement agents. For these reasons, highlighting the fact that the alleged

detention/arrest would have been lawful, no Intentional Infliction of Emotional

Distress was caused. *Martinez-Rodriguez v. Bank of America,* N.D. Cal. (2012),

*Atwater v. Lago Vista,* 532 U.S. 318 (2001).

## VI.    **CONCLUSION**

For all of the above reasons, summary judgment is favor of Defendants

Pedersen and Corbett should be granted.

Dated: October 17, 2024          Kevin Pedersen, Pro Se Litigant


By: _____/s   Kevin Pedersen_____

KEVIN PEDERSEN

Defendant, and Pro Se Litigant, and on

the behalf of Pro Se Litigant,

Defendant Rodger Corbett

## <u>CERTIFICATE OF COMPLIANCE – L.R. 11-6.1</u>

The undersigned, Defendant in this matter and Pro Se Litigant, certifies that

this brief contains 6807 words, as counted by the word-processing system used to prepare the

brief, in compliance with the word limit of L.R. 11-6.1.


Dated: October 17, 2024     KEVIN PEDERSEN, DEFENDANT AND PRO SE LITIGANT


By: _____ /s   Kevin Pedersen _____
KEVIN PEDERSEN
Defendant and Pro Se Litigant,
and on behalf of Pro Se Litigant,
Defendant Rodger Corbett

PROOF OF SERVICE

I am a party in this matter, representing myself Pro Se. I am over the age of 18. My address on file for this case is 301 E Arrow Hwy #101 – 625 San Dimas, CA 91773.

On October 17, 2024, I served the foregoing document described as:

DEFENDANT'S KEVIN PEDERSEN AND RODGER CORBETT'S **MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT;**

on interested parties in this action by emailing a copy of the document via PDF file to the following email addresses:


Waukeen Q. McCoy, Esq. McCoy Law Firm, P.C. 251 Post St., Suite 301

San Francisco, CA 94108

Attorneys for Plaintiffs

415-675-7705

415-675-2530 (fax)

mail@mccoyslaw.com


Brandon J. Anand, Esq. Anand Law PC

5455 Wilshire Blvd., Ste. 1609 Los Angeles, CA 90036

Attorneys for Plaintiffs

323-325-3389

brandon@anandlaw.com


Gary A. Nye, Esq.

Muhammed T. Hussain, Esq. Roxborough Pomerance Nye and Adreani LLP

5900 Canoga Avenue Suite 450 Woodland Hills, CA 90017

818-992-9999

818-992-9991 (fax)

mth@rpnalaw.com

gan@rpnalaw.com

emarlyn@rpnalaw.com

Attorneys for Bail Hotline Bonds, Inc. and Fugitive Recovery Investigations, Inc.


Robert J. Tyson, Assistant City Attorney for City of Anaheim

200 S. Anaheim Blvd. #356 Anaheim, CA 92805

RTyson@anaheim.net

GMayaJr@anaheim.net

Attorneys for Defendants Chad Cummings and Michael Dohmann, City of Anaheim


Chris Caroselli, Plaintiff in Pro Per

1310 W Diamond St #205

Anaheim, CA 92801

657-549-0726

Truly.psycho.logical@gmail.com

Ramenlover1312@gmail.com

asciibyxoxoxo@gmail.com

[X] BY ELECTRONIC MAIL TRANSMISSION: By electronic mail submission by transmitting a PDF format copy of such document(s) to each such person at the email address listed above/by their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.


I declare under penalty of perjury that the above is true and correct.

Executed at San Dimas, California.

Kevin Pedersen