1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JAMIE SINGLETON, et al.,

                Plaintiffs,

    v.

BAIL HOTLINE BAIL BONDS, INC, et al.,

                Defendants.

Case No. 8:22-cv-01826-MRA-KES

**ORDER GRANTING DEFENDANT ANAHEIM POLICE DEPARTMENT, CHAD CUMMINGS, AND MICHAEL DOHMAN'S RENEWED MOTION FOR SUMMARY JUDGMENT [143] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS KEVIN PEDERSEN AND RODGER CORBETT'S MOTION FOR SUMMARY JUDGMENT [155]; AND ORDER TO SHOW CAUSE**

Before the Court are (1) Defendants Anaheim Police Department, Chad Cummings, and Michael Dohman's (collectively, "Anaheim Defendants") Renewed Motion for Summary Judgment and (2) Defendants Kevin Pedersen and Rodger Corbett's (collectively, "Bail Agent Defendants") Motion for Summary Judgment (collectively, the "Motions"). ECF 143, 155. The Court read and considered the moving, opposing, and reply papers and held a hearing on December 2, 2024. ECF 182. For the reasons stated herein, the Court **GRANTS** Anaheim Defendants' Motion for Summary Judgment and **GRANTS IN PART AND DENIES IN PART** Bail Agent Defendants' Motion for Summary Judgment.

I.    **BACKGROUND**

A.    **Factual Background**[1]

On October 7, 2020, at 5:37 p.m., Defendant Kevin Pedersen, a bail agent, called Anaheim Police Department ("APD") dispatch to report that he and other bail agents had tracked down Michael Velasquez, an individual wanted on felony charges. ECF 148 ("AD-SGD") 1.  At approximately 5:46 p.m., dispatch called Pedersen back for more precise location information.  ECF 154 ("AD-RSGD") 2.  On the second call, Pedersen told dispatch that he was with Velazquez's girlfriend and confirmed his location. *Id.* 3, 4.  The girlfriend, though not identified by name, was Plaintiff Jamie Singleton. *Id.* 4.  A month prior to the incident, Singleton had met Defendant Rodger Corbett and other bail agents and was told that "[t]hey were looking for Velasquez" because "he was on the run from a bail or bounty that [she] had signed for" and said that Velazquez had missed his court appearance.  AD-SGD 37; ECF 160-1 ("BA-SGD")) 1-3.

On the day of the incident, Singleton picked up Velasquez at approximately 4:00 p.m. from his sister's house in Long Beach, California.  BA-SGD 4-5.  Singleton was driving, and Velasquez was in the front passenger seat. *Id.* 5.  They were pulled over near

---

[1] The Court has reviewed and considered all evidence in the record, including declarations and documentary evidence.  Unless otherwise indicated, the facts set forth in this section are taken from Defendants' Statements of Uncontroverted Facts ("AD-SUF" or "BA-RSGD"), Plaintiff's Statements of Genuine Disputes of Material Fact ("AD-SGD" or "BA-SGD"), or Defendants' Responses to Statements of Genuine Dispute ("AD-RSGD" or "BA-RSGD").  District courts are not required to make findings of fact on a motion for summary judgment.  Fed. R. Civ. P. 52(a)(3).  Instead, the court "may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion.  The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced" in the SUFs, the SGDs, and the RSGDs.  L.R. 56-4; *see also* Fed. R. Civ. P. 56(c).

his sister's house, at which point Singleton saw a man with a gun approach her driver side
window and did not immediately recognize the individual as Corbett.[2]  *Id.*  She drove off
and was pursued by Corbett in a silver pickup truck.  *Id.* 6.  There was a prolonged pursuit
in the Long Beach area.  *Id.* 8, 9.

After believing she lost her pursuer, Singleton and Velasquez stopped to get gas in
Garden Grove, California.  *Id.* 12.  Velasquez took over driving, and Singleton sat in the
front passenger seat.  *Id.*  The pursuer reappeared, and the chase resumed.  *Id.*  During the
pursuit, Velasquez called his mother to arrange for her to pick him, but not Singleton, up
from the Four Points Motel in Anaheim, California.  *Id.*; AD-SGD 39.  After dropping off
Velasquez at the Four Points Motel, Singleton drove to her friend Rina's house in Anaheim,
California.  BA-SGD 14.  Singleton did not obey traffic signals, ran red lights and stop
signs, and sped in an effort to lose the pickup truck during the incident.  *Id.* 13.  When
Velasquez was driving, he also failed to obey traffic laws and drove in opposing lanes of
traffic because, according to Singleton, the pursuing vehicle was "very close to us again."
*Id.* 14.

Singleton parked her car at Rina's house and briefly made contact with Rina.  *Id.* 16.
She then saw Corbett running at her full speed.  *Id.*  In her deposition, Singleton testified
that Corbett "grabbed" her and "twisted [her] arm backwards and was proceeding to put
handcuffs on me."  ECF 156 (Pedersen Supp. Decl.) ¶ 3, Ex. B (Singleton Depo.) at 69:6-
8.  This caused her shoulder to start "hurting."  ECF 160-2 (Anand Decl.) ¶ 2, Ex. 1
(Singleton Depo) at 76:18-25.  Pedersen walked up and may have assisted in the
handcuffing, *id.* at 69:25-70:1, but she admits that Pedersen "wasn't forceful with me, . . .
[i]t was Corbett that was."  *Id.* at 78:5-7.  Singleton testified that she was "struggling a little
bit" and "screaming."  *Id.* at 70:2-11.  She also testified that she "didn't know why [she]
was being put in handcuffs," *id.* at 78:14, but recalled Corbett saying "something about

---

[2] The parties dispute when Singleton realized that the individual pursuing her was
Corbett.  ECF 171 (BA-RSGD) 6, 7, 10.

running away, or I tried to hit him or something to that effect; one of those two things, maybe both," *id.* at 78:19-21.  Singleton was placed in the pickup truck.  AD-RSGD 5. Corbett subsequently undid the handcuffs because Singleton "was screaming in pain" and had urinated in her pants.  Singleton Depo. at 79:10-14.  Singleton was handcuffed for approximately 5 to 10 minutes until APD officers arrived on the scene.  BA-SGD 17; *see also* AD-RSGD 6.  She did not exit the truck after the handcuffs were removed because she was told to remain in the truck.  P-SGD-2 17.  The handcuffs were never reapplied.  *Id.*

Defendant Chad Cummings, an APD sergeant, parked his patrol car a car-length or more behind the pickup truck near the beginning of the alley.  P-SGD-1 7.  Defendant Michael Dohmann, an APD officer, parked further behind Cummings' car in the cul-de-sac at the end of Diamond Drive.  *Id.* 8.  Neither Cummings nor Dohmann spoke to the bail agents prior to arriving on the scene.  *Id.* 11.  Cummings spoke with Pedersen while at the scene.  *Id.* 12.  Cummings learned that the bail agents had detained Singleton.  *Id.* 13.  He understood that Singleton was being detained for questioning as to Velasquez's whereabouts.  *Id.* 14.  Neither Cummings nor Dohmann approached Singleton or the pickup truck where she was sitting while on the scene looking for Velasquez.  *Id.* 15, 19.  Singleton did not call out to the APD officers while they were at the scene or feel the need to do so. *Id.* 16, 17.  Because Velasquez was not found at the scene, Cummings and Dohmann put themselves back in service to help on other calls approximately 16 minutes after arriving on the scene.  *Id.* 35.

During the incident, Chris Caroselli ("Caroselli") was filming the encounter at the apartment complex.  *Id.* 24.  While doing so, Caroselli got into a minor scuffle with a bail agent who is not a party to this case.  *Id.*  Cummings noticed the scuffle and moved to break it up immediately while activating his body worn camera.  *Id.* 25.  While the APD officers were interacting with Caroselli, the bail agents asked Singleton if she could point out where Velasquez was staying and where she dropped him off.  BA-SGD 18.  She agreed to assist them.  *Id.*  The bail agents, including Bail Agent Defendants, did not stay in touch with the Officer Defendants after leaving the scene.  AD-RSGD 22.  Officer Defendants were

talking to Caroselli when the pickup truck left the scene. *Id.* 23. They did not see the
pickup truck leave or notice who was in it. *Id.*

Corbett and Pedersen did not report any crime to the APD officers at the scene. BA-
RSGD 29. The bail agents did not share or discuss with Officer Defendants a plan to
continue detaining Singleton. AD-RSGD 21. The bail agents drove Singleton to a school
in Garden Grove to meet up with other bail agents and then to Velasquez's sister's house
in Long Beach. BA-RSGD 20. Singleton approximates that she was in the car with the
bail agents for three hours. *Id.* Afterwards, she was dropped off at her vehicle at Rina's
house. *Id.*

### B. Procedural History

Plaintiffs Jamie Singleton and Chris Caroselli filed this action on October 5, 2022.[3]
ECF 1. In the operative First Amended Complaint ("FAC"), filed on October 10, 2023,
Singleton (hereinafter, "Singleton" or "Plaintiff") brings, in relevant part, the following
causes of action against Defendants Corbett and Pedersen (collectively, "Bail Agent
Defendants") and Defendants Cummings and Dohmann (collectively, "Officer
Defendants"): § 1983 claims for unreasonable search and seizure in violation of the Fourth
Amendment and excessive use of force in violation of the Fourth Amendment; and state
law claims for assault, battery, false imprisonment, intentional infliction of emotional
distress. ECF 53 (FAC) ¶¶ 30-51, 56-101. She also brings a § 1983 claim for municipal
liability against Defendant Anaheim Police Department ("APD").[4] *Id.* ¶¶ 52-55.

On March 29, 2024, Plaintiffs filed a Motion to Amend the Scheduling Order. ECF
68. On April 18, 2024, while that motion was pending, Anaheim Defendants filed their
initial Motion for Summary Judgment. ECF 77. The Court vacated the hearing on the

---

[3] The Court subsequently dismissed Caroselli for lack of prosecution on November
12, 2024. ECF 172.

[4] Plaintiff alleges the same § 1983 claims and state law claims against Defendants
Bail Hotline Bail Bonds and Fugitive Recovery Investigations. *See* FAC ¶¶ 30-51, 56-101.

Motion for Summary Judgment pending adjudication of Plaintiffs' Motion to Amend.  ECF 111.  Plaintiffs untimely opposed the Motion for Summary Judgment in part because they required additional discovery.  ECF 107.  On June 28, 2024, the Court denied in substantial part and granted in limited part the Motion to Amend the Scheduling Order and denied Anaheim Defendants' initial Motion for Summary Judgment without prejudice to allow the parties to complete party depositions.  ECF 116.

On September 19, 2024, Anaheim Defendants filed their Renewed Motion for Summary Judgment, noticed for hearing on November 7, 2024.  ECF 143.  On October 8, 2024, the Court continued the hearing to November 12, 2024, but maintained all briefing deadlines based on the prior hearing date.  ECF 146.  Plaintiff untimely filed her Opposition to Anaheim Defendants' Renewed Motion for Summary Judgment on October 11, 2024.[5] ECF 147.  On October 16, 2024, six days after the opposition deadline, Plaintiff filed a Notice of Errata, purportedly correcting certain errors in the Opposition.  ECF 150.  On October 17, 2024, Anaheim Defendants filed a Reply and Objections to Untimely Submitted Documents and Exhibits.  ECF 152, 153.

On October 17, 2024, Bail Agent Defendants filed their Motion for Summary Judgment, noticed for hearing on November 12, 2024.  ECF 155.  On October 22, 2024, the Court continued the hearing on both Motions for Summary Judgment to December 2, 2024, and set a briefing schedule on Bail Agent Defendants' Motion.  ECF 158.  Plaintiff timely filed her Opposition to Bail Agent Defendants' Motion on November 4, 2024.  ECF 160.  Bail Agent Defendants timely filed their Reply and Objections to Untimely Submitted Documents and Exhibits on November 11, 2024.  ECF 169, 170.  The Court held a hearing on the Motions for Summary Judgment on December 2, 2024.  ECF 182.

---

[5] The Notices of Electronic Filings reflect that the Memorandum, Plaintiff's Statement of Genuine Disputes, and the Declaration of Plaintiffs were in fact filed on October 11, 2024, not on October 10, 2024.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Entry of judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008); *Anderson*, 477 U.S. at 248.  "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case" to discharge its burden. *Id.* at 325.  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc).  The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Groh v. Ramirez*, 540 U.S. 551, 562 (2004).  However, "facts must be viewed in the light most

favorable to the nonmoving party only if" the dispute as to those facts is "genuine." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). And a plaintiff's claims do not survive summary judgment where merely a "scintilla of evidence" supports them. *Anderson*, 477 U.S. at 252. Rather, "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than a "metaphysical doubt" to establish a genuine dispute of material fact).

## III.    DISCUSSION

### A.    Defendants' Objections to Untimely Submitted Documents and Exhibits

Anaheim Defendants and Bail Agent Defendants filed Objections to Untimely Submitted Documents and Exhibits (the "Objections"). ECF 153, 169. Anaheim Defendants contend Plaintiffs' Opposition in its entirety was untimely filed, but request, at a minimum, that the Court decline to consider the late filed Declaration of Plaintiff's counsel and the Notice of Errata. ECF 153 at 3-4. Bail Agent Defendants assert that Plaintiff's counsel submitted exhibits, particularly non-documentary exhibits, by mail on November 5, 2024, a day past the Court's deadline, and request that, at a minimum, the Court decline to consider the late-filed exhibits. ECF 169 at 2.

Under Local Rule 7-3, the Court "may decline to consider any memorandum or other document not filed within the deadline set by order or local rule." A party filing any document in opposition to any noticed motion after the time for filing has expired shall be subject to the sanctions of Local Rule 83-7 and the Federal Rules. L.R. 7-13. An offending party or counsel may be subject to (A) "monetary sanctions, if the court finds the conduct was willful, grossly negligent, or reckless," or (B) "the imposition of costs and attorneys' fees to opposing counsel, if the court finds that the conduct rises to the level of bad faith and/or a willful disobedience of a court order." L.R. 83-7(a), (b).

Taking Bail Agent Defendants' Objections first, Plaintiff's deadline to file her Opposition was November 4, 2024. ECF 158. Plaintiff electronically filed her Opposition, including a Memorandum, Statement of Genuine Disputes, and Declaration of Plaintiff's

counsel on the court-ordered deadline.  The Declaration contains Exhibits 1 through 4 and further identifies the subject of the non-documentary exhibits, noting that they are being lodged with the Court and served on Defendants.  ECF 160-2 (Anand Decl.) ¶¶ 2-11. Papers must be served pursuant Federal Rule of Civil Procedure 5, which provides in relevant part that a paper can be served by "mailing it to the person's last known address— in which event service is complete upon mailing."  Fed. R. Civ. P. 5(b)(2)(C).  It is unclear whether the exhibits at issue were *mailed* or *received* by Bail Agent Defendants on November 5, 2024, as such it is unclear if service was timely or untimely.  In any event, Bail Agent Defendants had sufficient time to prepare their Reply and do not allege any prejudice arising from the delay.  The Court therefore overrules Bail Agent Defendants' objections and considers Plaintiff's exhibits.

Turning to Anaheim Defendants' objections, Plaintiff's deadline to file her Opposition was October 10, 2024.  *See* ECF 143, 146.  The Notices of Electronic Filing record that Plaintiff filed her Opposition on October 11, 2024: the Memorandum at 12:00 a.m., her Statement of Genuine Disputes at 12:05 a.m., and the Declaration of Plaintiff's Counsel in support of the Opposition at 10:32 p.m.  While the Court can look past the technically minutes-late midnight filings, Plaintiff's counsel submitted his Declaration a full 22 hours past the Court-ordered deadline.  What is more, Plaintiff's counsel then submitted a Notice of Errata on October 16, 2024, at 4:42 p.m., *six days* past the court-ordered deadline.  Compounding this error, Plaintiff's Notice of Errata is not even redlined to assist the Court and the parties in identifying changes made to the original filing.  But it appears Plaintiff's counsel made numerous substantive edits, including revising an incomplete section of the legal argument in the Memorandum, correcting citations in the Statement of Genuine Disputes, and adding evidence to his Declaration.  ECF 150 at 2. Plaintiff's counsel makes no attempt to explain this untimely filing.

This conduct is unacceptable and prejudicial to Anaheim Defendants.  Indeed, Anaheim Defendants state that at the time of filing of the Notice of Errata, they had already finalized their Reply hours earlier and were in the process of finalizing their Response to

Plaintiff's Statement of Genuine Disputes.  ECF 153 at 2-3.  As such, the Court sustains in part Anaheim Defendants' objections and declines to consider Plaintiff's Notice of Errata in its entirety.

The Court further finds that the conduct of Plaintiff's counsel was "grossly negligent" and "rises to the level of bad faith and willful disobedience of a court order." L.R. 83-7(a), (b).  In its June 27, 2024, Order, the Court expressly admonished Plaintiff's counsel for a pattern of conduct that "evince[d] carelessness verging on bad faith" and warned that "any subsequent late filings may not be considered and may be the subject of sanctions."  *Id.* at 7 n.2 (citing L.R. 7-13).  Notwithstanding adjustments to the pre-trial schedule, the Court set clear deadlines for Plaintiff to file her Oppositions to the instant Motions.  *See* ECF 158, 143, 146.  Plaintiff's counsel did not take caution and failed to comply with the Court's Orders.  Accordingly, the Court **ORDERS** Plaintiff's counsel to show cause no later than **seven days** from the date of this Order why monetary sanctions should not be imposed.

## B.   Claims 1-3: § 1983 Claims

Plaintiff brings three causes of action pursuant to 42 U.S.C. § 1983.  Her first and second claims allege that Bail Agent Defendants, assisted by Officer Defendants, used excessive force to unlawfully seize and then kidnap Singleton in violation of her Fourth Amendment rights.  FAC ¶¶ 30-51.  Her third claim for municipal liability alleges that APD maintains a custom, policy, or practice of condoning the abuse of police authority and has a history of unlawfully assisting private bail agents in violating constitutional rights.  *Id.* ¶¶ 52-55.

### 1.   *Bail Agent Defendants: State Action*

Bail Agent Defendants argue that Corbett and Pedersen, as bail agents, were not acting under color of state law when they allegedly seized Singleton and therefore cannot be held liable under 42 U.S.C. § 1983.  ECF 155 at 22-23.  Plaintiff responds that while it is true that bail agents are not *per se* state actors, this is not a brightline rule, and here, Corbett and Pedersen served a "public function" and "acted in concert with" the APD

officers.  ECF 147 at 12-13, 19-21.  As discussed below, Plaintiff's rebuttal conflates two separate, but related doctrines: state action and integral participation.

Section 1983 provides a cause of action against any person who, under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution and laws of the United States.  *See* 42 U.S.C. § 1983.  "The 'color of law' requirement of § 1983 is treated as the equivalent of the 'state action' requirement under the Constitution." *Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *West v. Atkins*, 487 U.S. 42, 49 (1988)); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).  "[P]rivate parties are not generally acting under color of state law."  *Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991); *Ouzts v. Maryland Nat. Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974) ("[P]urely private conduct, no matter how wrongful, is not within the protective orbit of section 1983.").

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295  (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982) (observing that case law "insist[s] that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State").  "Th[is] determination is usually 'fact bound', and that militates against too hasty a termination of an action."  *Price*, 939 F.2d at 708 (quoting *Lugar*, 457 U.S. at 939); *see also Brentwood Acad.*, 531 U.S. at 295 ("What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity.").  Courts will therefore "employ a two-prong inquiry to analyze whether the [state]'s 'involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which plaintiff complains.'"  *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).  Those prongs are defined as (1) the state policy requirement and (2) the state actor requirement.  *Children's Health Def.*, 112 F.4th at 754.

Under the first "state policy" prong, "the alleged constitutional deprivation must result from 'the exercise of some right or privilege created by the State' or 'a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Children's Health Def.*, 112 F.4th at 754 (quoting *Lugar*, 457 U.S. at 937). In the factual context presented here, Plaintiff must show that the bail agents were acting "in accordance with a state delegation of authority[.]" *Collins*, 878 F.2d at 1153. Notably, Plaintiff maintains the exact opposite—that Bail Agent Defendants acted in *violation* of state law. ECF 160 at 22 (alleging that Bail Agent Defendants violated California's citizen's arrest statute).

Bail Agent Defendants rely heavily on the Ninth Circuit's decision in *Ouzts v. Maryland Nat. Ins. Co.*, 505 F.2d 547 (9th Cir. 1974) (en banc), in arguing that bail agents are *never* acting under color of state law. ECF 143 at 20; ECF 155 at 22. The Court agrees with Plaintiff that *Ouzts* does not stand for this overly broad proposition. *See* ECF 147 at 8-9; ECF 160 at 12-14. In *Ouzts*, the Ninth Circuit considered "whether the conduct of [out-of-state bounty hunters and bail bonds agents] in forcibly seizing [the bonded principal] and removing him to Nevada constituted action under the color of state law." 505 F.2d at 550. The court began its analysis by examining "the nature and source of the bail bondsman's status and authority," observing that "the common law right of the bondsman to apprehend his principal arises out of a contract between the parties and does not have its genesis in statute or legislative fiat." *Id.* at 550-51. The court noted, however, that California had entered the field and regulated the business and practices of bail bondspeople through California Penal Code §§ 847.5 and 1301. *Id.* at 552. After reviewing the statutory provisions, the court found that the bail bondspeople "did not even purport to comply with the California statute." *Id.* at 553. On these detailed factual findings, the Court concluded that California law did not foster the type of misconduct alleged, but in fact expressly prohibits and makes criminal the bail bondspeople's actions. *Id.* at 553-54. Because the bail agents acted contrary to state law, the Court found no state action to support a § 1983 claim. *Id.* at 555.

Although *Ouzts* cautioned that "there is no rigid formula for measuring state action," *id.* at 550, the parties here did not fairly engage in a similar fact-intensive analysis. Nevertheless, *Ouzts* and its progeny stand for the proposition that "bounty hunters and bail bond agents who did *not* comply with the state statutes governing their actions are *not* acting under color of state law." *Dixon v. Wesbrook*, No. 1:11-CV-01290 AWI, 2012 WL 6160797, at *6 (E.D. Cal. Dec. 11, 2012) (citing *Ouzts*, 505 F.2d at 553-54, *Collins v. Womancare*, 878 F.2d 1145, 1153 (9th Cir. 1989)). In *Collins*, for example, the Ninth Circuit held that an unlawful citizen's arrest failed to meet the first prong of the state action inquiry because such a claim depends upon the *violation* of California's citizen's arrest statute, California Penal Code § 837. 879 F.2d at 1151-53. "Under this scenario, it is clear that [the private party]'s actions 'could not be ascribed to any governmental decision; rather [the private party's employees] were acting contrary to the relevant policy articulated by the State." *Id.* at 1153 (quoting *Lugar*, 457 U.S. at 940). Like the plaintiff in *Collins*, Plaintiff contends that the Bail Agent Defendants violated California's citizens' arrest statute and therefore acted contrary to state law. Thus, consistent with precedent, the Court finds that Plaintiff has not demonstrated that Bail Agent Defendants were acting pursuant to any state-created right.

Under the second "state actor" prong, "the party must 'fairly be said to be a state actor.'" *Children's Health Def.*, 112 F.4th at 754 (quoting *Lugar*, 457 U.S. at 937). The Ninth Circuit has recognized at least four different general tests that may aid the court in identifying state action: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson*, 975 F.3d at 747 (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 754 (9th Cir. 2024). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley*, 326 F.3d at 1092; *cf. Lugar*, 457 U.S. at 939 (acknowledging, without deciding, that these tests may not be "actually different in operation," but "simply different ways of characterizing the necessarily fact-bound inquiry"). At base, the state action test requires the court "to

evaluate whether the nature of the relationship between the private party and the government is such that 'the alleged infringement of federal rights is fairly attributable to the [government].'"  *Children's Health Def.*, 112 F.4th at 754 (quoting *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021)).

Plaintiff argues that Corbett and Pedersen served a public function or acted in concert with the state, or in other words, joint action. ECF 160 at 19-22.  Under the public function test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley*, 326 F.3d at 1093 (citation omitted).  The test is satisfied "only on a showing that the function at issue is 'both traditionally and exclusively governmental.'"  *Id.* (citation omitted).  Under the joint action test, courts "consider whether 'the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the state knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093 (citation and internal quotation marks omitted).  "This requirement can be satisfied "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted).

Here, Plaintiff argues only that Anaheim Defendants deployed officers to assist the bail agents.  ECF 160 at 20-21.  This does not demonstrate that the state "insinuated itself into a position of interdependence." *Kirtley*, 326 F.3d at 1093.  Even so, the uncontroverted evidence shows that the officers were deployed to assist with apprehending Velasquez, not seizing Singleton.  For example, Singleton had already been arrested before officers arrived at the scene, and they had no contact with Singleton whatsoever.  The undisputed evidence reflects that the officers' inquiry was directed at uncovering Velasquez's whereabouts.  Plaintiff ultimately fails to raise a triable issue of fact that would show that the state derived any benefit from the claimed constitutional deprivations.

1    The Court finds that Plaintiff has not established state action to state a § 1983 claim
2    against Bail Agent Defendants.  Accordingly, the Court **GRANTS** Bail Agent Defendants'
3    Motion for Summary Judgment as to Claims 1 and 2 against Corbett and Pedersen.

4    ### 2.    *Officer Defendants: Integral Participation*

5    Even if Bail Agent Defendants were found to have acted under color of law, it would
6    not resolve whether Officer Defendants can be held liable for their purportedly unlawful
7    conduct.  Anaheim Defendants argue that Officer Defendants are liable only if they were
8    integral participants in the purported deprivation of Plaintiff's rights, and that they were
9    not.  ECF 143 at 20-25.  Plaintiff responds that Officer Defendants were integral
10    participants "when 1) they provide affirmative physical support at the scene thereof, and
11    2) they are aware of the plan to commit the alleged violation or have reason to know of the
12    plan, but do not object."  ECF 147 at 9.

13    In general, § 1983 does not impose liability on a defendant official who does not
14    subject or cause a plaintiff to be subjected to a constitutional deprivation.  *Peck v. Montoya*,
15    51 F.4th 877, 888-89 (9th Cir. 2022); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)
16    ("[E]ach Government official . . . is only liable for his or her own misconduct.").  To be
17    liable, the official "must be more than a 'mere bystander[].'"  *Reynaga Hernandez v.*
18    *Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (quoting *Bravo v. City of Santa Maria*, 655 F.3d
19    1076, 1090 (9th Cir. 2011)).  Under Ninth Circuit precedent, "an official whose individual
20    actions do not themselves rise to the level of a constitutional violation may be held liable
21    under section 1983 only if the official is an integral participant in the unlawful act."  *Peck*,
22    51 F.4th at 889 (citation and internal quotation marks omitted).  The Ninth Circuit "ha[s]
23    yet to define the minimum level of involvement for liability under the integral-participant
24    doctrine," *Reynaga Hernandez*, 969 F.3d at 941, but its "precedents have permitted liability
25    in two situations: those in which (1) the defendant knows about and acquiesces in the
26    constitutionally defective conduct as part of a common plan with those whose conduct
27    constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others
28    which [the defendant] knows or reasonably should know would cause others to inflict the

-15-

constitutional injury,'" *Peck*, 51 F.4th at 889 (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1979)).

Plaintiff's theory falls under the first "common plan" scenario. *See Peck*, 51 F.4th at 889. The Ninth Circuit's decision in *Boyd v. Benton Cnty.*, 374 F.3d 773 (9th Cir. 2004), is instructive. There, while executing a search warrant at a home, several officers provided armed backup while another unlawfully threw a flash-bang device inside. *Boyd*, 374 F.3d at 780. The court held that the backup officers were integral participants in the unlawful conduct for several reasons. First, the officers provided affirmative physical support. *Id.* at 780 (observing that the officers "stood armed behind [the offending officer] while he reached into the doorway and deployed the flash-bang"). Second, the use of the flash-bang was "part of the search operation in which every officer participated in some meaningful way." *Id.* Third, "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.* In *Peck*, the Ninth Circuit acknowledged that this "common plan" category of liability is "fairly narrow." 51 F.4th at 889. That is, "simply being present at the scene does not demonstrate that an officer has acted as part of a common plan." *Id.*; *see also Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (holding that an officer standing in the front yard of a house interviewing witnesses while other officers carried out an unlawful search of the house was not an integral participant in the search because he "participated in neither the planning nor the execution of the unlawful search").

This case is clearly distinguishable from the common plan found in *Boyd*. The evidence is undisputed that Cummings and Dohmann arrived on the scene *after* Singleton had already been handcuffed and placed in the truck, and there is no evidence that they instructed Corbett or Pedersen to arrest Singleton or were consulted prior to the alleged seizure. They did not provide any affirmative physical support to aid Corbett and Pedersen in seizing Singleton. Nor was either officer involved with planning or executing the purportedly false arrest and imprisonment of Singleton. There is simply no evidence of integral participation under a "common plan" theory. *See Torres v. City of Los Angeles*,

1   548 F.3d 1197, 1206 (9th Cir. 2008) (finding no evidence of integral participation where it

2   was undisputed that the officer was not present at the time of the false arrest and did not

3   direct or consult on the false arrest).    Plaintiff's conclusory statements that Officer

4   Defendants "were more than mere bystanders" and that there is "no room for doubt that

5   the officers were aware of, or had reason to be aware of the bail agents' plan" are

6   unavailing.  *See* ECF 147 at 10.    Such bare allegations—without reference to any

7   supporting evidence in the record—fail to raise a triable issue of fact and ultimately do not

8   satisfy Plaintiff's burden in opposing summary judgment.

9        Accordingly, the Court **GRANTS** Anaheim Defendants' Motion for Summary

10  Judgment as to Claims 1 and 2 against Officer Defendants.

11               ### *3.    Anaheim Police Departments: Municipal Liability*

12       Anaheim Defendants argue that Singleton has not presented any evidence that APD

13  had a policy or that the policy was the moving force behind the bail agents' actions.  ECF

14  143 at 25-26.  Without referencing *any* evidence, Plaintiff summarily responds that "[t]here

15  is sufficient evidence to create a [triable] issue of material fact" regarding her *Monell* claim.

16  ECF 147 at 10.    She contends that "[t]he actions and attitudes" of APD officers and

17  dispatchers when dealing with bail agents demonstrates that the City had "a practice of

18  treat (sic) [bail agents] as quasi-law enforcement agents" and that "[t]his practice was the

19  moving force behind [its] employees (sic) involvement" in the alleged constitutional

20  deprivations. *Id.* at 11.

21       It is firmly established that "a municipality cannot be held liable under § 1983 on a

22  *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

23  658, 691 (1978).  Instead, a municipality can be sued for constitutional deprivations visited

24  pursuant to an "official policy, practice, or custom." *Id.* at 690-91; *see also Rivera v. Cnty.*

25  *of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014).   The Ninth Circuit recognizes four

26  theories that establish municipal liability under *Monell*: "(1) an official policy; (2) a

27  pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision

28  or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592,

602-03 (9th Cir. 2019).  To establish *Monell* liability for an official policy or custom, a plaintiff must show that "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation."  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  A local government's policies "may be set by [its] lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'"  *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 784 (1997).

As an initial matter, the Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Where, as here, a plaintiff fails to cite evidence raising a genuine issue of triable fact, the court may properly enter summary judgment against it.  *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  Plaintiff does not identify *any* city policy that treats bail agents as quasi-law enforcement agents.  Even if the city had such a policy, this theory would still fall short of demonstrating that the policy itself was the moving force of the alleged constitutional deprivation.  As Anaheim Defendants note, it is state law, not city policy, that governs the conduct of bail agents, including their coordination with local law enforcement.  *See* Cal. Penal Code §§ 1299.02 (authorizing certain private individuals, including bail fugitive recovery agents, to apprehend, detain or arrest a bail fugitive), 1299.08 (requiring authorized persons to notify local law enforcement of their intent to apprehend a bail fugitive).  Plaintiff fails to respond to this argument and therefore concedes it.  *See USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, *legal or factual*, why summary judgment should not be entered." (citation omitted)).

Accordingly, the Court **GRANTS** Anaheim Defendants' Motion for Summary Judgment as to Claim 3 against Anaheim Police Department.

### C.    Claims 4-7: State Law Claims

Plaintiffs' fourth, fifth, sixth, and seventh causes of action for assault, battery, false imprisonment, and intentional infliction of emotional distress ("IIED"), respectively, generally allege that Bail Agent Defendants, aided by Officer Defendants, threatened physical violence against Singleton and held her against her will and that Bail Agent Defendants kidnapped and handcuffed Singleton for several hours while in constant communication with Officer Defendants.  FAC ¶¶ 56-89.

#### 1.    Officer Defendants

Anaheim Defendants argue that summary judgment should be granted in favor of Officer Defendants on the state law claims because there is no dispute that Cummings and Dohmann were not present when Singleton was initially arrested and never met, much less touched, Singleton during the incident.  ECF 143 at 26-29.  Nor in their view is there any evidence that Cummings and Dohmann conspired with Bail Agent Defendants to commit the state law torts alleged.  *Id.* at 29-30.  Singleton fails to rebut any arguments raised by Anaheim Defendants as to the state law claims.  ECF 152 at 19.  "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case."  *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000); *see also USA Petroleum Co.*, 13 F.3d at 1284.  Summary judgment must be granted where, as here, the nonmoving party bearing the ultimate burden at trial has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex*, 477 U.S. 322.  Accordingly, the Court **GRANTS** Anaheim Defendants' Motion for Summary Judgment as to Claims 4-7 against Officer Defendants.

#### 2.    Bail Agent Defendants: Assault and Battery

Bail Agent Defendants argue that they lawfully arrested Singleton pursuant to California's citizen's arrest statute and the force used to effectuate her arrest was objectively reasonable.  ECF 155 at 27-28.  Plaintiff responds that Corbett and Pedersen

never attempted a citizen's arrest and failed to promptly deliver her to a peace officer such that her arrest was unlawful.  ECF 160 at 22-24.

a)   <u>Arrest</u>

Central to Plaintiff's claims for assault and battery against Bail Agent Defendants is the lawfulness of their arrest.  *See Daniel v. City of Pleasant Hill*, No. 15-CV-02782-EDL, 2015 WL 13887334, at *5 (N.D. Cal. Sept. 30, 2015) (applying constitutional standard in the context of a purportedly unlawful citizen's arrest).  The same reasonableness standard applies to state law battery and false arrest claims and § 1983 claims premised on excessive force and false arrest.  *Ballew v. City of Pasadena*, 642 F. Supp. 3d 1146, 1198 (C.D. Cal. 2022) (collecting cases).  "A warrantless arrest is reasonable if the [arrestor] has probable cause to believe that the suspect committed a crime in the officer's presence."  *D.C. v. Wesby*, 583 U.S. 48, 56 (2018).  "Probable cause exists where the 'available facts suggest a fair probability that the suspect has committed a crime.'"  *Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023) (citation and internal quotation marks omitted).

Under California's citizen's arrest statute, a private person may arrest another, *inter alia*, "[f]or a public offense committed or attempted in his presence," and "[w]hen a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."  Cal. Penal Code § 837.  Absent certain exceptions, "the person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it."  *Id.* § 841.  "A private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him or her to a peace officer."  *Id.* § 847(a).

Bail Agent Defendants argue that they made a lawful citizen's arrest because Singleton "clearly and obviously" violated California Penal Code § 32 in their presence by aiding Velasquez in evading arrest.  Section 32 provides that "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, . . . , having knowledge that said

-20-

principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Cal. Penal Code § 32. It is a felony offense for a person charged with a felony and released from custody on bail to willfully fail to appear. *Id.* § 1320.5.

Plaintiff maintains that Bail Agent Defendants detained her to coerce her cooperation, not to conduct a citizen's arrest. ECF 160 at 27. Put differently, Plaintiff's frequent refrain is that Bail Agent Defendants "never attempted to effectuate a citizen's arrest." *See, e.g.*, BA-SGD 3-4, 8, 10, 12-16. This argument is not persuasive. "In considering whether a citizen's arrest was made, and the legality thereof, it is the substance and not any 'magic words' which [the court] must consider." *Padilla v. Meese*, 184 Cal. App. 3d 1022, 1032 (1986) (citation omitted). Although it is disputed whether Bail Agent Defendants told Singleton that she was being arrested and the basis for her arrest, *see* BA-SGD 16, resolving this dispute in Plaintiff's favor does not negate the only objectively reasonable conclusion drawn from Bail Agent Defendants' conduct: "[i]n substance [they] made a citizen's arrest[.]" *Padilla*, 184 Cal. App. 3d at 1032.

Plaintiff next contends that there is no evidence to support Bail Agent Defendants' allegation that she was an accessory to any crime. ECF 160 at 11. But the relevant inquiry is not whether she actually committed or aided in an offense, but whether Bail Agent Defendants had "reasonable cause" at the time that she was committing or aiding in a crime. Cal. Penal Code § 837. Here, the undisputed facts available to Corbett and Pedersen at the time demonstrate, at a minimum, a "fair probability" that Singleton was aiding Velasquez in evading arrest. *Hill*, 70 F.4th at 515. It is undisputed that Corbett and other bail agents met Singleton a month prior to the incident and made her aware that Velasquez was wanted for skipping bail. P-SGD-1 37; BA-SGD 1, 2. On the day of the incident, Singleton and Velasquez were pulled over by a silver pickup truck. BA-SGD 5. Although Singleton did not recognize the plain-clothed individual approaching the car, she does not dispute that the individual in question was Corbett and that she drove off as the individual approached the car. *Id.* 6. Having previously met Singleton and observing Velasquez in the passenger

seat, it was objectively reasonable for Corbett to believe that Singleton drove off upon recognizing him as a bail agent looking for Velasquez. During the prolonged pursuit in the Long Beach area, Bail Agent Defendants also observed Singleton (and Velazquez) driving erratically and in violation of the traffic code in an attempt to lose pursuit. *Id.* 13. Bail Agent Defendants had reasonable cause to arrest Singleton.

Plaintiff argues that Singleton's arrest was nevertheless unlawful because Bail Agent Defendants failed to deliver her promptly to law enforcement. ECF 160 at 22-23. There is no dispute that Singleton was never taken before a magistrate or delivered to a peace officer once arrested. Still, Plaintiff does not cite—and the Court has not identified—any authority in support of the proposition that unnecessary delay in presenting an otherwise lawfully arrested suspect renders the arrest itself unlawful. To the contrary, it is well-established under California law that "[a] person detained pursuant to a lawful arrest cannot bring an action for the false arrest itself." *Kaufman v. Brown*, 93 Cal. App. 2d 508, 511 (1949) (citation omitted), *overruled in part on other grounds, Dragna v. White*, 45 Cal. 2d 469 (1955). "However, an action for false imprisonment arising from unlawful detention may be maintained if the defendant unlawfully detains the prisoner for an unreasonable period of time[.]" *Id.* As applied to the citizen's arrest statute, "where the arrest is lawful, subsequent unreasonable delay in taking the person before a magistrate will not affect the legality of the arrest, although it will subject the offending person to liability for so much of the imprisonment as occurs after the period of necessary or reasonable delay." *Dragna*, 45 Cal. 2d at 473. Section 847(a) treats "tak[ing] the person arrested before a magistrate" and "deliver[ing] him or her to a peace officer" disjunctively. Cal. Penal Code § 847(a). Thus, Bail Agent Defendants' failure to deliver Singleton to law enforcement does not render the arrest itself unlawful but may make them liable for false imprisonment for any unnecessarily prolonged detention, as discussed below.

          b)    <u>Use of Force</u>

Bail Agent Defendants argue that because they had probable cause that Plaintiff had committed a felony, any force used to effectuate the arrest was also lawful. ECF 155 at

27-28.   Plaintiff responds that even if her arrest was lawful, the force used to effectuate her arrest was objectively unreasonable because it involved "using handcuffs and prolonged physical restraint" in the absence of any immediate threat.  ECF 160 at 26-27.

A person making an arrest may use "such restraint as is reasonable" to effectuate an arrest.  Cal. Penal Code § 835.  To determine whether an officer's use of force was objectively reasonable, the court must assess the force "from the perspective of a reasonable officer on the scene," *Graham v. Connor*, 490 U.S. 386, 396 (1989), and "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion," *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  In assessing reasonableness, courts consider the following factors, known as the *Graham* factors: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion."  *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021) (internal quotation marks omitted) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017)).

Neither Bail Agent Defendants nor Plaintiff adequately brief the *Graham* factors, each devoting a mere paragraph to this critical analysis.  *See* ECF 155 at 26-28; ECF 160 at 26.  However, the material facts are largely undisputed.  Pedersen "wasn't forceful." Singleton Depo at 78:5-7.  But Corbett "grabbed" Singleton, "twisted" her arm, and handcuffed her, causing her shoulder to start "hurting."  *Id.* at 69:6-8.  Singleton "struggl[ed] a bit" and was "screaming."  *Id.* at 70:2-11.  She recalled Corbett saying "something about running away, or I tried to hit him or something to that effect."  *Id.* at 78:19-21.  After a few minutes, Corbett undid the handcuffs because Singleton was "in pain" and had urinated herself.  *Id.* at 79:13.  Based on the *Graham* factors, there is not sufficient evidence for a reasonable jury to find that Corbett's use of force was objectively unreasonable under the circumstances.

-23-

The first *Graham* factor assesses the type and amount of force used.  *Rice*, 989 F.3d at 1121.  Courts consider the "risk of harm and the actual harm experienced."  *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012).  Additionally, the court "may consider the presence and severity of a plaintiff's injuries," although injuries are not required. *Cortesluna v. Leon*, 979 F.3d 645, 653-54 (9th Cir. 2020) (citing *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018)), *rev'd on other grounds, Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021).  "Grabbing a suspect's arm or wrist and twisting and pulling to effectuate an arrest does not typically involve a level of force found to be unreasonable." *Santiago v. Hawai'i, Cnty. of Hawai'i-Hawai'i Police Dep't*, No. CV 16-00583 DKW-KSC, 2017 WL 6519016, at *9 (D. Haw. Dec. 20, 2017) (collecting cases).  Further, handcuffing to effectuate an otherwise lawful arrest, without more, involves a de minimis amount of force.  *See Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (holding that "normal handcuffing procedure" involved "minimal intrusion"); *Muehler v. Mena*, 544 U.S. 93, 99 (2005) (noting that a person who was handcuffed during the execution of a search warrant suffered a "marginal intrusion"); *see also Heyward v. Bart Police Dep't*, No. 3:15-CV-04503-LB, 2016 WL 2619677, at *4 (N.D. Cal. May 9, 2016) ("[H]andcuffing to effect an arrest is not excessive force."); *Wesson v. Linde*, No. 219CV1880KJMDBP, 2021 WL 3723170, at *4 (E.D. Cal. Aug. 23, 2021) ("The use of handcuffs during an arrest is quite common and often a standard practice and, ordinarily . . . is a very low quantum of force that will not constitute excessive force.").

Under certain circumstances, the manner in which an individual is handcuffed may amount to excessive force.  *See Cortesluna*, 979 F.3d at 655 ("[T]ight handcuffing can constitute excessive force." (quoting *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000)); *Wall v. Cnty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) ("It is well-established that overly tight handcuffing can constitute excessive force"); *see also Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989).  Whether handcuffing is abusive is "usually fact-specific and is likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960.  However, a plaintiff

1    alleging an excessive force claim has the "burden of proof of providing specific facts to

2    show that the force used was unreasonable or that she sustained actual injuries." *Arpin v.*

3    *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001). "[C]onclusory

4    allegations unsupported by factual data are insufficient to defeat [a] summary judgment

5    motion." *Id.* (finding that plaintiff's claim of injury was "unsupported as she does not

6    provide any medical records to support her claim that she suffered injury as a result of

7    being handcuffed"). "In cases where the Ninth Circuit has held that excessively tight

8    handcuffing can constitute a Fourth Amendment violation, plaintiffs either were

9    demonstrably injured by the handcuffs or their complaints about the handcuffs being too

10   tight were ignored by the officers." *Hupp v. City of Walnut Creek*, 389 F. Supp. 2d 1229,

11   1232-33 (N.D. Cal. 2005) (collecting cases).

12       Plaintiff's case does not meet this standard. The only showing of injury are

13   Plaintiff's generalized statements that Corbett's grabbing of her arm caused her shoulder

14   to start "hurting" and his handcuffing caused her "pain." *Cf. Palmer*, 9 F.3d at 1436

15   (holding that officer's application of handcuffs was abusive and excessive where plaintiff

16   presented evidence that the handcuffs were fastened "so tightly around his wrist that they

17   caused [him] pain and left bruises that lasted for several weeks"); *Hansen*, 885 F.2d at 645

18   (finding that district court had improperly granted summary judgment on excessive force

19   claim where plaintiff had presented bystander testimony of unwarranted force and medical

20   records showing that she sustained bruises on her wrist and pain in her finger and upper

21   arm). Plaintiff does not present any other evidence of injury. Moreover, she concedes that

22   in response to her screams of pain, Corbett undid the handcuffs. Based on the undisputed

23   facts and drawing all inferences in Plaintiff's favor, the Court finds that Plaintiff has not

24   raised a triable issue that Corbett's use of force was anything more than marginal.

25       The second *Graham* factor requires evaluating the government's interest in the use

26   of force by considering: "the severity of the crime at issue, whether the suspect poses an

27   immediate threat to the safety of the officers or others, and whether he is actively resisting

28   arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Based on these

factors, the government's interest in the use of force at issue was significant. Although there is no evidence that Singleton was armed or that she posed an immediate threat to anyone's safety, the facts as presented to Bail Agent Defendants indicated that Singleton was actively evading arrest by flight and engaged in a serious crime. As explained above, Corbett and Pedersen had probable cause to believe that Singleton was aiding Velazquez—wanted on felony charges—in evading arrest. They pursued her on a lengthy, dangerous car chase, and at the time of arrest, were unaware of Velasquez's whereabouts.

The last step in the *Graham* analysis requires balancing the gravity of the intrusion on the individual against the government's need for that intrusion. *Rice*, 989 F.3d at 1121. The analysis above leaves little to balance. The nature and type of force was minimal, whereas the government's interest in the intrusion was significant. On this record, the Court finds that Plaintiff has not identified sufficient evidence for a reasonable jury to find in her favor on her assault and battery claims.

Accordingly, the Court **GRANTS** Bail Agent Defendants' Motion for Summary Judgment as to Claims 4 and 5.

### 3. Bail Agent Defendants: False Imprisonment

Bail Agent Defendants argue that Singleton agreed to assist the bail agents in showing them where Velasquez had been staying, and as such Plaintiff has not shown that her confinement was nonconsensual. ECF 155 at 28. Plaintiff responds that her testimony demonstrates that her detention was not consensual. ECF 160 at 28-29.

Under California law, the crime of false imprisonment is "the unlawful violation of the personal liberty of another." Cal. Penal Code § 236. The tort is identically defined, consisting of the following elements: "(1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief." *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 855 (2015) (citation omitted). "Restraint may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress." *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 715 (1994) (internal citations omitted). As explained above,

a defendant is liable for false imprisonment "where the arrest is lawful but an unreasonable delay has occurred in taking the person before a magistrate, for so much of the imprisonment as occurred after the period of the reasonable or necessary delay." *City of Newport Beach v. Sasse*, 9 Cal. App. 3d 803, 810 (1970) (citing *Dragna*, 45 Cal. 2d at 471-74).

Plaintiff raises triable issues of fact on her false imprisonment claim. A reasonable jury may find that once APD officers arrived on the scene, Bail Agent Defendants unnecessarily delayed presenting her to law enforcement, and as a result, her prolonged detention constituted false imprisonment. In addition, Singleton testified at her deposition that even after Bail Agent Defendants removed her handcuffs, they told her she could not leave the truck. Singleton Depo. at 79:19-25, 90:9-13. She sat in the car for "hours" and "wasn't able to get out of the car." *Id.* at 90:23-25. There is no genuine dispute that she agreed to assist bail agents following her arrest and detention, but on these facts, a reasonable jury may find that she was restrained without her consent and that her cooperation was coerced.

Accordingly, the Court **DENIES** Bail Agent Defendants' Motion for Summary Judgment as to Claim 6.

### 4.   *Bail Agent Defendants: IIED*

The elements of a claim for IIED are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993) (quoting *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991)). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* And the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.*

Bail Agent Defendants argue that because their arrest of Singleton was lawful, they are not liable for IIED.  ECF 155 at 29-30.  Plaintiff does not address her IIED claim in her Opposition.  As a result, she abandoned the claim and failed to sufficiently establish the existence of its essential elements.  *BankAmerica Pension Plan*, 206 F.3d at 826; *Celotex*, 477 U.S. 322.  Accordingly, the Court **GRANTS** Bail Agent Defendants' Motion for Summary Judgment as to Claim 7.

## IV.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1)    Anaheim Defendants' Motion for Summary Judgment [143] is **GRANTED** in full as to all Claims.  Defendants Anaheim Police Department, Chad Cummings, and Michael Dohman are therefore **DISMISSED** from this action with prejudice;

(2)    Bail Agent Defendants' Motion for Summary Judgment [155] is **GRANTED IN PART** as to Claims 1, 2, 4, 5, and 7 **AND DENIED IN PART** as to Claim 6, which shall proceed to trial;

(3)    Plaintiff is ordered to **SHOW CAUSE** within **seven (7) days** of this Order why summary judgment should not be granted in favor of Defendants Bail Hotline Bail Bonds, Inc. ("BHBB") and Fugitive Recovery Investigations ("FRI") as to Claims 1, 2, 4, 5, and 7 for the reasons set forth in this Order.  Pursuant to Rule 56(f), the Court may grant summary judgment for a nonmovant after giving notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f).  The FAC alleges only that Bail Agent Defendants were agents of BHBB and FRI at the time of their alleged conduct.  *See, e.g.*, FAC ¶¶ 2, 15-16, 59-60.  The Court, having concluded that Claim 6 for false imprisonment is the only triable cause of action alleged against Bail Agent Defendants, has serious doubts about the viability of Plaintiff's claims against BHBB and FRI apart from Claim 6.  In the alternative to a written response, Plaintiff, BHBB, and FRI may file by the above deadline a stipulation of dismissal as to Claims 1, 2, 4, 5, and 7 against BHBB and FRI.

(4)    The remaining parties shall submit a **JOINT STATUS REPORT** within **ten (10) days** of the date of this Order, proposing a date for the Final Pretrial Conference within **60 days** of the date of this Order.

(5)    As explained above, Plaintiff's counsel is ordered to **SHOW CAUSE** no later than **seven (7) days** from the date of this Order why monetary sanctions should not be imposed.

**IT IS SO ORDERED.**

Dated: July 25, 2025

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE